# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ROBERT ANTHONY SMITH,

    Petitioner,

vs.

E. K. MCDANIEL, et al.,

    Respondents.

Case No. 3:08-CV-00335-RCJ-(RAM)

**ORDER**

    Before the court are the first amended petition for writ of habeas corpus (#20), respondents' motion to dismiss (#40), and petitioner's opposition (#44). The court finds that two grounds for relief are procedurally defaulted, and the court grants the motion in part.

    After a jury trial, petitioner was convicted in the Eighth Judicial District Court of the State of Nevada of second-degree murder with the use of a deadly weapon; that court entered its judgment on May 8, 1998. Ex. 33 (#25). Petitioner appealed, and the Nevada Supreme Court dismissed the appeal on July 7, 2000. Ex. 66 (#25).

    On August 25, 1998, while his direct appeal was still pending, petitioner filed in state court a post-conviction petition for a writ of habeas corpus. Ex. 36 (#25). That state petition was still pending, with a procedural history more complicated than is necessary for the court to relate, when this court received petitioner's federal habeas corpus petition (#13) on June 16, 2008. The court appointed counsel, who filed the first amended petition (#20). Upon stipulation of the parties, on June 9, 2009, the court stayed this action until the state-court proceedings concluded. Order (#32). Petitioner's state habeas corpus petition was denied on November 20, 2009. Ex. 133 (#34).

Petitioner appealed, and the Nevada Supreme Court affirmed the denial on December 10, 2010.  Ex. 140 (#34).  Upon petitioner's motion (#33), the court reinstated this action.  Order (#37).  The motion to dismiss (#40) followed.

Respondents argue that grounds 1 through 5 are procedurally defaulted.  A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).

To demonstrate cause to excuse a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule.  Murray, 477 U.S. at 488.

To show prejudice, the petitioner "must establish 'not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Correll v. Stewart, 137 F.3d 1404, 1415 (9th Cir. 1998) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Petitioner raised on direct appeal the claims contained in grounds 1 through 3.  Ground 1 is a claim of prosecutorial misconduct; petitioner raised this as issue A on direct appeal.  Ex. 39, pp. 7-9 (#25).  Ground 2 is a claim that the trial court erroneously sentenced petitioner on the deadly-weapon enhancement because the jury did not find petitioner guilty of the use of a deadly weapon; petitioner raised this as issue B(2) on direct appeal.  Id., pp. 12-13 (#25).  Ground 3 is a claim that the prosecution failed to present sufficient evidence that petitioner was guilty of all the elements of second-degree murder; petitioner raised this as issue B(1) on direct appeal.  Id., pp. 9-11.  On direct appeal, the Nevada Supreme Court determined that all three issues were without merit.  Ex. 66, pp. 1-5 (#25).

1    Grounds 1, 2, and 3 in the operative petition in the state post-conviction proceedings are the
2 same as grounds 1, 2, and 3 of the first amended petition (#20). See Ex. 127 (#34). The state
3 district court determined that all three grounds were procedurally barred by the doctrine of the law
4 of the case. Ex. 133, pp. 12-14, 15-16 (#34). On appeal, petitioner argued that the doctrine of the
5 law of the case should not apply because the Nevada Supreme Court's direct-appeal decisions on
6 these grounds were clearly erroneous. Ex. 137, pp. 28-29 (#34). Petitioner also argued that
7 appellate counsel failed to properly raise the factual and legal bases of grounds 1, 2, and 3.[1] Id., p.
8 22 (#34). The Nevada Supreme Court did not directly address petitioner's argument that the
9 doctrine of the law of the case should not apply. On the argument that appellate counsel failed to
10 properly raise the grounds, the Nevada Supreme Court held:

> Third, Smith claims that appellate counsel was ineffective for failing to properly raise claims of error relating to prosecutorial misconduct, sufficiency of the evidence, and the deadly weapon enhancement. This court considered and rejected these claims on direct appeal. The doctrine of the law of the case prevents further litigation of these issues and cannot be avoided by a more detailed and precisely focused argument. Hall v. State, 91 Nev. 314, 316, 535 P.2d 797, 799 (1975). Therefore, the district court did not err in denying these claims.

15 Ex. 140, p. 5 (#34). This court assumes that the Nevada Supreme Court rejected without comment
16 petitioner's argument regarding the applicability of the doctrine of the law of the case. Although the
17 Nevada Supreme Court applied state law to bar Petitioner from re-litigating those claims, that state-
18 law ruling depended upon the Nevada Supreme Court's prior rulings of federal law on direct appeal.
19 See Ex. 66 (#25). Therefore, the application of Hall is not an independent state-law ground which
20 bars federal habeas corpus review. See Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003) (en
21 banc).
22    Respondents argue that the court should dismiss ground 2 because it is not cognizable in
23 federal habeas corpus. In ground 2, petitioner claims violations of the Sixth and Fourteenth
24 Amendments because he was sentenced to a deadly-weapon enhancement, but the jury never

---

[1]This argument is contained in ground 7(b) of both the operative state habeas corpus petition and the federal first amended petition (#20).

1  concluded that he was guilty of the use of a deadly weapon.  This is a question on the merits of
2  ground 2, which respondents should address in an answer.
3        Respondents argue that grounds 4 and 5 are procedurally defaulted because they were
4  dismissed in state court pursuant to Nev. Rev. Stat. § 34.810:  Petitioner could have raised the
5  grounds on direct appeal, but he did not.  Section 34.810 is an adequate and independent state rule
6  that can be the basis for a federal procedural default.  Vang v. Nevada, 329 F.3d 1069, 1074 (9th
7  Cir. 2003).  Ground 4 is a claim that the admission of prior-bad-act evidence was a deprivation of
8  due process.  Ground 5 is a claim that petitioner was convicted on the basis of evidence seized in the
9  violation of the Fourth Amendment.  In the state habeas corpus appeal, the Nevada Supreme Court
10 held:

> Smith argues that he should be allowed to raise his prior bad act and Fourth Amendment claims of error in his post-conviction petition.  In an attempt to overcome the applicable procedural bar, see NRS 34.810(1)(b), he cites as good cause an assertion that he raised these claims in a pro per appellate brief.  Noting that Smith was represented by counsel, this court rejected his submissions.  Further, _even if Smith could establish good cause, the prior bad act and Fourth Amendment claims are, as noted above, meritless._  Thus, he cannot demonstrate prejudice and his claims are procedurally defaulted.

15 Ex. 140, p. 5 n.1 (#34) (emphasis added).  The emphasized portion, in which the Nevada Supreme
16 Court noted that the claims lacked merit, refers to claims that appellate counsel provided ineffective
17 assistance by not raising the claims on direct appeal.
18       The court does not accept petitioner's argument that in this case the procedural bar of
19 § 34.810 was dependent upon federal law.  Petitioner refers to the emphasized portion of the Nevada
20 Supreme Court's decision.  It is true that the Nevada Supreme Court held that petitioner could not
21 demonstrate prejudice to excuse the procedural bar because the claims are meritless.  It also is true
22 that a state procedural bar that relies upon federal law is not independent of federal law.  See
23 Bennett, 322 F.3d at 581.  However, § 34.810 required petitioner to demonstrate both cause and
24 prejudice to excuse the procedural bar.  If petitioner could not demonstrate either cause or prejudice,
25 then the claims would be procedurally barred.  Petitioner's argument for cause was that he tried to

raise the issues now contained in grounds 4 and 5 in a proper-person appellate brief.[2] The Nevada Supreme Court rejected that argument because petitioner was represented by counsel on direct appeal. That part of the Nevada Supreme Court's ruling is definitely not based upon federal law, because petitioner had no federal constitutional right to represent himself on direct appeal. Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 163 (2000). Even if this court were to disregard the Nevada Supreme Court's ruling on prejudice because it was based upon federal law, this court still would find that grounds 4 and 5 are procedurally defaulted in this court because the Nevada Supreme Court's ruling on cause was not based upon federal law.

Petitioner's presents two arguments for cause to excuse the procedural default in this court. One argument is that the Nevada Supreme Court refused to consider his proper-person supplemental brief. That refusal cannot be cause to excuse the procedural default because, as noted above, petitioner had no right to present a proper-person brief on direct appeal. Martinez, 528 U.S. at 163. The other argument is that counsel provided ineffective assistance by refusing to raise the issues on direct appeal. Ineffective assistance of counsel can be cause to excuse a procedural default. See Carrier, 477 U.S. at 489.

A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

---

[2]Petitioner also argued that ineffective assistance of counsel was cause to excuse the operation of § 34.810. He argued the same as independent grounds for relief. The Nevada Supreme Court determined that the grounds of ineffective assistance lacked merit before it turned to the procedurally barred grounds. Ex. 141, pp. 4-5 (#34).

-5-

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

Ground 4 is a claim that evidence of petitioner's prior-bad-acts was admitted improperly. Brian Sutton testified that he saw petitioner carrying a chrome 9mm pistol a few weeks before the shooting at issue in this case. Ex. 22, p. 355 (#23). Breana Alexander testified that she saw petitioner holding a chrome 9mm pistol the day before the shooting. Id., p. 404. Mario Sanchez testified that he and petitioner smoked PCP on the day of the shooting. Ex. 23, p. 640 (#24). Detective Mark Fowler testified that petitioner smelled of PCP at the time of petitioner's arrest. Ex. 22, pp. 555-57 (#22). Detective Fowler also testified that petitioner appeared to be under the influence of PCP. Id., p. 562. Finally, Detective Fowler testified that he found marijuana in a search of petitioner's bedroom. Id., p. 565.

In his state-court post-conviction proceedings, petitioner claimed that appellate counsel provided ineffective assistance because appellate counsel did not raise on direct appeal the issue in ground 4. Petitioner presented the same claim in ground 7(a), and petitioner argues now that the ineffective assistance is cause to excuse the procedural default of ground 4. On this issue, the Nevada Supreme Court held:

> First, Smith argues that appellate counsel was ineffective for failing to raise several prior bad act claims of error. To the extent he argues that evidence of his possession of the type of gun used to commit the murder and his PCP use on the night of the shooting are collateral bad acts, he errs—these facts are directly relevant to establishing motive and means. Additionally, while evidence of his possession of a bag of marijuana is not directly relevant, any error is harmless given the extensive testimony on Smith's PCP use. Therefore, because Smith failed to demonstrate a reasonable probability that these claims would have succeeded on appeal, we conclude that the district court did not err in denying them.

Ex. 140, p. 4 (#34). Certainly, evidence that petitioner possessed before the shooting a gun of the same caliber used to kill the victim is relevant. Not only did Brian Sutton testify that he saw petitioner with a chrome 9mm pistol some weeks before the shooting, he also testified that he saw

petitioner walk away from the victim with the same pistol. Ex. 22, p. 356 (#23). The evidence about petitioner's usage of PCP shortly before the shooting is relevant to his state of mind. Furthermore, as counsel noted in his closing argument, many of the witnesses also had been using PCP. Ex. 25, p. 818 (#24). The evidence could be used against petitioner regarding his state of mind, but it also could be used on behalf of petitioner to argue that the other witnesses' perceptions were clouded. There was no reasonable probability that counsel would have succeeded with an objection at trial or with raising the issue on appeal. As for the evidence of marijuana, this court agrees with the Nevada Supreme Court. There was so much relevant evidence of petitioner's usage of PCP that evidence of possession of marijuana could not have had a substantial and injurious effect upon the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619 (1993). Appellate counsel was not ineffective because he did not raise the issue in ground 4 on direct appeal. Consequently, petitioner has not shown cause to excuse the procedural default of ground 4.

Ground 5 is a claim that petitioner was convicted based upon evidence seized from an illegal and unreasonable search of his apartment. Petitioner raised this issue in a motion to suppress. See Ex. 12 (#21). The trial court held an evidentiary hearing and denied the motion. Ex. 22, p. 310 (#23). In his state post-conviction proceedings, petitioner claimed that appellate counsel provided ineffective assistance by not raising the Fourth Amendment issue on direct appeal. Petitioner raises the same claim in ground 7(a), and petitioner argues that ineffective assistance is cause to excuse the procedural default of ground 5. On this issue, the Nevada Supreme Court held:

> Second, Smith argues that appellate counsel was ineffective for failing to raise a claim of error related to detectives' search of his mother's apartment, which he contends was conducted in violation of his Fourth Amendment rights. His mother testified that Smith had been residing in her apartment for three weeks before the shooting. When detectives entered, she gave consent to the search and signed a consent form. Smith therefore failed to demonstrate a reasonable probability that this contention would have succeeded on appeal, and we conclude that the district court did not err in denying the claim.

Ex. 140, pp. 4-5 (#34). Petitioner challenged the validity of the consent of his mother, Linda Rey, on two grounds. First, he argued that Rey suffered from a psychological condition that made her consent uninformed. Ex. 12, pp. 3-4 (#21). However, at the hearing on the motion to suppress, Rey testified that her same medications at the time of the search were the same as her medications at the time of the hearing. Ex. 22, pp. 284-85 (#23). She also testified that she had no problem

understanding the questions at the hearing. Id. Officers testified at the time of the search that Rey appeared to be emotional, but that she understood their questions and the consent form. Ex. 22, pp. 252, 254, 270 (#23). Second, petitioner argued that Rey had no authority to consent to a search of petitioner's bedroom. However, Rey was the sole lessee of the apartment, and she had been living there since at least 1993. Ex. 22, pp. 293-94 (#23). One police officer knew Rey and knew that she was the tenant of the apartment, because he had spoken with her on earlier occasions about her children. Ex. 22, p. 249 (#23). As the Nevada Supreme Court noted, petitioner lived there only for the three weeks prior to the shooting, on April 13, 1995. Petitioner argued that his mother had no authority to consent to the search of his bedroom, where the police found and seized evidence. However, police found petitioner lying on the bed in that bedroom, and the door was open. Ex. 22, p. 235 (#23). Even if Rey did not have authority to consent to a search of the full apartment, under these circumstances the police reasonably would have believed that Rey did have that authority. See Illinois v. Rodriguez, 497 U.S. 177, 186 (1990). The law did not support petitioner's argument, and there was no reasonable probability that had petitioner raised the Fourth Amendment issue on direct appeal, the result would have been different. Appellate counsel was not ineffective because he did not raise the issue in ground 5 on direct appeal. Consequently, petitioner has not shown cause to excuse the procedural default of ground 5.

Respondents argue in the alternative that petitioner cannot raise ground 5 in a federal habeas corpus petition because he had a full and fair opportunity to pursue the issue in state court. See Stone v. Powell, 428 U.S. 465 (1976). The court will not address this argument because it is dismissing ground 5 as procedurally defaulted.

Finally, respondents argue that grounds 7(a) and 7(b) fail to state claims upon which relief can be granted. In ground 7(a), petitioner claims that appellate counsel failed to raise on direct appeal the issues contained in grounds 4 and 5. Ground 7(b) is a claim that appellate counsel failed to raise properly the factual and legal bases of grounds 1, 2, and 3. The court will dismiss ground 7, but not for the reasons that respondents argue. Instead, the court effectively determined that ground 7(a) is without merit when the court determined that petitioner had not shown cause to excuse the procedural default of grounds 4 and 5. As for ground 7(b), this court has determined that the

Nevada Supreme Court resolved the claims contained in grounds 1, 2, and 3 on their merits, and that those grounds are not procedurally defaulted. The court agrees with petitioner that in this situation, ground 7(b) is superfluous. See Opposition, p. 11 n.9 (#44).

   IT IS THEREFORE ORDERED that respondents' motion to dismiss (#40) is **GRANTED** in part. Grounds 4, 5 and 7 of the first amended petition (#20) are **DISMISSED** from this action.

   IT IS FURTHER ORDERED that respondents shall have forty-five (45) days from the date of entry of this order to file and serve an answer, which shall comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner shall have forty-five (45) days from the date on which the answer is served to file a reply.

   Dated: This 4th day of November, 2011.

_____
ROBERT C. JONES
Chief United States District Judge